UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

Joseph Johnson,                                                                 Civil No. 05-159 RHK/AJB

                Plaintiff,

v.                                                                                          **REPORT AND RECOMMENDATION
                                                                                            ON SUMMARY JUDGMENT MOTIONS**

Special Agent Josh Florell, et al.,

                Defendants.


This action is before the United States Magistrate Judge on separate motions for summary judgment by defendants City of Minneapolis and Andy Stender[1] [Docket No. 64] and state defendants Josh Florell, Steve Parshall, and Mark Sletta[2] [Docket No. 74]. Claims against a federal defendant, Assistant United States Attorney David Steinkamp were dismissed by Order dated December 7, 2006. Plaintiff has filed a pro se second amended complaint for violation of civil rights under 42 U.S.C. § 1983. The pleading alleges constitutional violations by defendants with respect to a motor vehicle stop, a subsequent vehicle search, and an arrest which took place on June 9, 1999. Plaintiff is a federal prisoner who is presently incarcerated at the Federal Correctional Institution in Oxford, Wisconsin. Each of the defendant agents and officers was involved in one or more aspects of the stop and arrest. The action has been referred to the magistrate judge for report and

---

[1] Defendant Andy Stender is a City of Minneapolis Police Officer.

[2] Defendant Josh Florell is a Minnesota Bureau of Criminal Apprehension Special Agent, and defendants Steve Parshall and Mark Sletta are Minneapolis Police Officers who were assigned to the Metro Gang Strike Task Force during the time pertinent to this action.

recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  State of Minnesota defendants Josh Florell, Steve Parshall, and Mark Sletta are represented by W. Karl Hansen, Assistant Minnesota Attorney General.  The City of Minneapolis and Andy Stender are represented by C. Lynne Fundingsland, Assistant Minneapolis City Attorney.

The second amended complaint alleges violation of the plaintiff's Fourth and Fifth Amendment rights to be free from unreasonable search and seizure and deprivations of family rights, property, and freedom of movement without due process of law.  The pleading further alleges that defendant City of Minneapolis failed to provide proper training and supervision to its officers in violation of his constitutional rights.  Defendant Florell is sued in his individual capacity only.  Defendants Parshall, Sletta, and Stender were initially sued in their official and individual capacities.  The second amended complaint alleges violations of plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and contains monetary claims for compensatory and punitive damages.  Defendants now move for summary judgment on grounds that the individuals are entitled to qualified immunity, plaintiff has not asserted facts sufficient to support his claims for constitutional violations, claims arising out of the underlying stop and search are barred under the ruling in Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994), plaintiff does not have a federal claim for property losses, and he has not stated a cognizable constitutional claim against the city for improper training and supervision of officers.  In response to plaintiffs' motion, plaintiff voluntarily dismissed all of his official capacity claims and deprivation of family rights claims.[3]  He opposes

---

[3] Plaintiff submitted separate opposition memorandums in response to the separate summary judgment motions by the state defendants and the city defendants.  The voluntary dismissal of official

dismissal of excessive force claims, property claims, and search and seizure claims, as well as a failure to train and supervise claim against the City of Minneapolis. For reasons discussed below the magistrate judge recommends that the defendants' motions for summary judgment be granted and that the second amended complaint in this action be dismissed with prejudice.

## DISCUSSION

### Background and Claims

Plaintiff Joseph Johnson was stopped at approximately 3:00 p.m. on June 9, 1999, pursuant to a traffic stop by Minneapolis Police Officer Andy Stender and other officers. A woman and three children were with plaintiff in the vehicle. Law enforcement officers had previously received information from a confidential informant regarding plaintiff's involvement in drug sales and deliveries, and police surveillance on the plaintiff and his vehicle was being conducted prior to the stop. Upon making the stop officers placed the plaintiff in a squad car. Meanwhile, BCA Special Agent Josh Florell arrived and requested plaintiff's permission to search the vehicle, but plaintiff declined to consent to a search. Therefore, Special Agent Florell contacted Assistant United States Attorney Steinkamp to discuss the circumstances and to obtain legal advice regarding the legality of a warrantless vehicle

---

capacity claims and deprivation of family rights claims is contained only in the brief entitled "Memorandum of Law in Opposition to State Defendants' Motion." The dismissal requests broadly address claims against defendants in general whereas arguments opposing summary judgment on other claims are made by reference to state defendants in particular. Plaintiff's memorandum in response to the city defendants' motion for summary judgment does not discuss official capacity or deprivation of family rights claims. The court deems the voluntary dismissals to encompass official capacity claims and deprivation of family rights claims against all of the individually named defendants, including Andy Stender. In any event, plaintiff has not stated an official capacity cause of action against defendant Stender that would survive summary judgment.

search. Officers subsequently determined that the vehicle could be lawfully searched, asserting that they had a reasonable belief that the vehicle contained contraband. A drug sniffing canine was at the scene and while being walked around and through the vehicle the dog alerted to a controlled substance in the back seat. Further search by defendant Task Force Officers Steve Parshall and Mark Sletta led to the discovery of a plastic bag containing a white substance that field tested positive for cocaine.

Plaintiff was subsequently removed from the squad car, arrested, and handcuffed. Mr. Johnson had visible tattoos, and officers at the scene decided to take photographs of the plaintiff and his tattoos in accordance with a Minnesota Gang Strike Force practice of obtaining and photographing identifying characteristics of suspected criminal gang members.[4] Photos of plaintiff's face and various tattoos were taken by defendant Florell.[5] While the photos were taken plaintiff's head was held by another officer so a face shot could be obtained and plaintiff's shirt sleeves were held up by an officer to permit pictures of upper arm tattoos.[6] Defendant Parshall assisted in holding plaintiff so that a face photo could be taken.[7] Officers who held plaintiff's sleeves up to expose tattoos are not positively identified.[8]

---

[4] Affidavit of Mark Sletta, ¶4.

[5] Affidavit of Josh Florell, ¶6, Exh. B.

[6] Id.

[7] Plaintiff's Memorandum of Law in Opposition to State Defendants' Motion for Summary Judgment, Exh. 1.

[8] Id., Exh. 2, page 3.

Plaintiff contends that he did not resist and that officers Parshall, Sletta, and Florell excessively twisted and tugged on this arms and torso, and grabbed and twisted his face and jaw with excessive force, in their efforts to obtain the photographs. Defendants deny choking or punching the plaintiff, and deny twisting and pulling on his arms in a manner that would cause more than minimal discomfort, but they acknowledge using minimal force as necessary to restrain plaintiff so that photographs could be obtained. Plaintiff asserts that he took Tylenol and aspirin for pain suffered from his injuries after being transported to the Hennepin County Jail for booking. He alleges that his vehicle was impounded and towed, and that the car was later vandalized, and jewelry items, CD equipment, and music discs were taken, because officers left the windows open and doors unlocked.

Plaintiff was later indicted on federal drug charges. In the federal criminal proceeding[9] Johnson moved to suppress evidence obtained by search and seizure. Hearing was held on the motion; a report and recommendation was issued by the Magistrate Judge, therein recommending that the motion to suppress be denied;[10] and an Order denying the motion to suppress was issued by the District Court.[11] Johnson subsequently pled guilty to charges contained in the indictment and was sentenced to two concurrent 144 month prison terms.[12]

---

[9] See Report and Recommendation on Motion to Dismiss by Defendant Steinkamp, dated November 8, 2005, citing the Declaration of Patricia Cangemi, Exhibit C.

[10] Id., Declaration of Patricia Cangemi, Exhibit E. The report and recommendation in the criminal action did not contain findings of fact or conclusions of law with respect to search and seizure, but did expressly state that the recommendation was based upon "the agreement of the parties that probable cause existed to stop and search the vehicle [Joseph Johnson] was in."

[11] Id., Declaration of Patricia Cangemi, Exhibit F.

[12] Id., Declaration of Patricia Cangemi, Exhibit C.

Plaintiff commenced this civil action in February 2005, and a second amended complaint was filed with the Court and served on defendants in June 2005. Plaintiff seeks punitive damages in the amount of $125,000 and compensatory damages in the amount of $125,000 severally from the individual defendants, and an additional joint compensatory award of $500,000 from all defendants, including the City of Minneapolis. The state defendants have moved for summary judgment on grounds that they are entitled to qualified immunity on an excessive force claim, plaintiff has no constitutional claim for deprivation of property, and plaintiff's Fourth Amendment search and seizure claim is precluded as a result of his conviction. The city and defendant Stender move for summary judgment on grounds that plaintiff has not alleged facts sufficient to maintain a Fourth Amendment claim, the individual defendant is entitled to qualified immunity protection, the city cannot be held liable in the absence of individual liability for excessive force, defendant's conviction precludes the search and seizure claim, and plaintiff has not stated a claim for violation of due process by city defendants.

**Standard of Review**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). In satisfying this burden, however, the non-

moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 106 S.Ct. at 1355, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56(e). Pro se pleadings are held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21, 92S.Ct. 594, 596 (1972). However, the party opposing the motion still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

**Excessive Force**

Plaintiff alleges in his second amended complaint that Officer Stender excessively twisted and tugged plaintiff's arms while putting on handcuffs; Officer Sletta excessively twisted and tugged plaintiff's arms while putting on handcuffs and forced him to sit upright for photos; Agent Florell choked plaintiff and grabbed his jaw and chin to force him to look into a camera; and Officers Stender, Florell, and Parshall, and Agent Florell each failed to stop the others from using excessive force. Plaintiff alleges that defendants' actions caused weeks of soreness in his shoulders, cuts on his wrist, a sore neck, and blurred vision. In affidavits in opposition to defendants' motion the plaintiff essentially restates his fact allegations and further states that defendants' actions worsened a pre-existing back and neck injury; that he told officers he had a prior injury and they were hurting him; and that he did not

7

resist arrest or other demands made by the officers.[13] A witness to the arrest, Sharesha Green, attests that plaintiff did not resist arrest, officers became loud and physically hostile when plaintiff refused to answer questions and asked for a lawyer, plaintiff told officers that they were hurting his neck, and photos of her and the plaintiff were taken without consent.[14] The full extent of medical treatment described by the plaintiff was Tylenol and aspirin provided by a deputy at the Hennepin County Jail and a nurse at the Anoka County Jail.[15] The record contains no objective evidence of injury or efforts by plaintiff to obtain medical treatment, and plaintiff makes no claim that he sought further medical attention or suffered permanent injury.

A claim that officers used excessive force during an arrest is analyzed under the Fourth Amendment standard of objective reasonableness. Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). "The right to be free form excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person," and a violation of the right will support a § 1983 action. Crumley v. St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003)(quoting Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998)). The right to make an arrest or stop necessarily encompasses the right to use some degree of force to effect it. Id. (citing Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989). Consequently, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (quoting

---

[13] Affidavit dated July 5, 2006, ¶¶ 4-6, and Affidavit of Joseph Johnson dated June 6, 2006, ¶¶5-7.

[14] Affidavit of Sharesha Green notarized June 9, 2006.

[15] Affidavit of C. Lynne Fundingsland, Exh. 2, p. 3, plaintiff's answers to interrogatories.

citations omitted). The reasonableness of a particular use of force is considered in light of the circumstances of the case. Wertish at 1066. Circumstances which have been found pertinent in determining whether the force used by an officer was reasonable include the severity of the crime, the level of the safety threat posed by the suspect, and whether the suspect was resisting arrest. Crumley at 1007.

De minimus use of force or injury is insufficient to support a finding of a constitutional violation even if such force was unnecessary to effect the arrest. Crumley v. St. Paul, 324 F.3d at 1007 (citations omitted). With respect to the results of the use of force, allegations of pain without some evidence of more permanent injury is not sufficient to support an excessive force claim. Id. (citing Foster v. Metro. Airports Com'n, 914 F.2d 1076, 1082 (8th Cir. 1990)). Furthermore, allegations of pain or long-term injury are not sufficient to support a claim of excessive force in the absence of any medical records evidencing permanent injury. Id. (discussing injury resulting from being handcuffed too tightly).

In the present instance the plaintiff contends that no amount of force was reasonable because he did not resist arrest and he did not resist defendants' demands that he allow himself to be photographed. Defendants do not allege that plaintiff resisted arrest or presented an immediate safety risk to themselves or the public, and they acknowledge that some measure of force was applied to obtain photographs of plaintiff's face and tattoos. Defendants insist, however, that plaintiff was not cooperative and that their use of physical restraint was minimal and justified for purposes of taking photos. Defendants further argue that the absence of significant physical injury is a circumstance that wholly belies plaintiff's excessive force claim.

Plaintiff's second amended complaint alleges that defendant's excessively twisted his arms while he was handcuffed and that he suffered cuts on his wrists, along with soreness in his shoulders and neck, headaches, and blurred vision. Plaintiff's excessive force claims in this matter are not directly based upon the manner in which handcuffs were secured, though the claims do relate to the manner in which his arms were held while handcuffs were placed on him as well as treatment by officers during the post-arrest activity of obtaining photographs. The claims in this case are analogous to the claims in handcuff application cases. Photographing suspected gang members and identifying criteria such as tattoos is an established practice of the Minnesota Gang Strike Force, and the photos are generally taken when a suspect is apprehended because booking photos are typically limited to face shots.[16] The plaintiff does not challenge the general practice of photographing a suspect's face following an arrest and the court finds no clear grounds for such a challenge. Furthermore, the court finds no inherent constitutional offense in lifting a tee shirt or holding up shirt sleeves to photograph tattoos.[17] For purposes of the present motions for summary judgment the court accepts plaintiff's contention that he did not offer resistance to being photographed, but that officers used some measure of force to obtain his compliance with their demands. Notwithstanding those evidentiary determinations by the court, summary judgment for defendants is appropriate in light of the complete absence of medical records or any other objective evidence of permanent injury. Indeed, there is essentially no

---

[16] Affidavit of Steve Parshall, §4.

[17] Plaintiff's characterization of defendants' actions in this regard as a "strip search" is absurd. Plaintiff's Memorandum of Law in Opposition to Defendant's City of Minneapolis and Andrew Stender's Motion for Summary Judgment, page 8. Plaintiff was not subjected to a strip search by defendants in this case.

concrete evidence of either temporary or permanent injury, and plaintiff's mere allegations that he experienced weeks of pain and aggravation of pre-existing injury for which he obtained Tylenol and aspirin as pain medication does not establish the existence of injuries sufficient in severity to sustain an excessive force claim.  Crumley v. St. Paul, 324 F.3d 1003, 1007.  Plaintiff has not sufficiently stated a cause of action for excessive force under the Fourth Amendment and the claim should therefore be dismissed.

**Fourth Amendment Search and Seizure**

The second amended complaint generally alleges a violation of plaintiff's right to be protected from unreasonable search and seizure under the Fourth Amendment.  Defendants contend that the claim is barred under the ruling in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994). This issue was previously and directly addressed by report and recommendation for dismissal of claims against defendant David Steinkamp,[18] adopted by Order of the district court dated December 7, 2005.[19]  The court therein determined that as a matter of law the second amended complaint did not state a cause of action based upon unreasonable search and seizure and dismissal of claims against Steinkamp was appropriate pursuant to Fed. R. Civ. P. 12(b)(6).  The report and recommendation stated:

> Plaintiff Joseph Johnson was arrested at the scene and was subsequently indicted on federal drug charges.  In the federal criminal proceeding[20] Johnson moved to suppress evidence obtained by search and seizure.  Hearing was held

---

[18] Docket No. 50.

[19] Docket No. 57.

[20] Declaration of Patricia Cangemi, Exhibit C.

on the motion; a report and recommendation was issued by the Magistrate Judge, therein recommending that the motion to suppress be denied;[21] and an Order denying the motion to suppress was issued by the District Court.[22] Johnson subsequently pled guilty to charges contained in the indictment, and he was sentenced to two concurrent 144 month prison terms.[23]

Though the second amended complaint contains a general description of events and discusses facts surrounding the vehicle stop, including communications between officers and defendant Steinkamp and the search and seizure of property, plaintiff's claim against [defendants] essentially relies upon the mere allegation that the search and seizure was unreasonable, and [plaintiff] has neither submitted nor alleged particular facts to support such a claim.  It is arguable that facts supporting plaintiff's claims could be revealed in discovery, thereby precluding pre-discovery dismissal on qualified immunity, except that the record in this matter contains predicate facts which establish as a matter of law that plaintiff has no basis for an unreasonable search and seizure claim.  Plaintiff Johnson had an opportunity to challenge the legality of the search and seizure in the underlying criminal action.  He filed a motion to suppress search and seizure evidence which came before the magistrate judge for hearing.  The court was advised that the parties agreed that probable cause existed for the vehicle stop as well as the subsequent vehicle search, and the court therefore recommended that the motion to suppress evidence be denied.  The defendant, Mr. Johnson, filed no objections to the report and recommendation and the motion was denied by Order from the District Court dated September 1, 1999.  Under these circumstances the court can envision no set of facts that would be sufficient to establish a constitutional violation relating to legal advice on the search and search that was provided to officers by defendant Steinkamp.  As a matter of law plaintiff cannot show that he was subjected to unreasonable search and seizure and he

---

[21] Id., Exhibit E.  The Report and Recommendation did not contain findings of fact or conclusions of law with respect to search and seizure, but did expressly state that the recommendation was based upon "the agreement of the parties that probable cause existed to stop and search the vehicle [Joseph Johnson] was in."

[22] Id., Exhibit F.

[23] Declaration of Patricia Cangemi, Exhibit C.

> cannot prevail on a claim of constitutional violation in that regard. . . . .
> . . .
>
> **Heck v. Humphrey.** [Defendants] also move[] for dismissal on grounds that the case is an impermissible challenge to the criminal conviction and is therefore barred under the ruling in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994). In that case the court expressly stated that civil rights actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments. <u>Id.</u> Plaintiff Johnson insists that the present action does not represent an attack on the criminal conviction and contends that his suit for damages based upon an allegedly unreasonable search is an example of a case that should be allowed to proceed under <u>Heck v. Humphrey</u>, 114 S.Ct. at 2372-73 n.7. Plaintiff's argument is disingenuous and his reliance upon footnote 7 is misplaced. A determination in this civil case that the search of the vehicle occupied by Mr. Johnson was conducted in violation of his constitutional rights would place the suppression order and conviction into question, even in the absence of any recourse in the criminal case. Footnote 7 indicates that a civil suit for damages based upon an unreasonable search might be permissible if evidence obtained in an unlawful search was received at the criminal trial as the result of doctrines such as independent source or inevitable discovery, or the receipt was harmless error, but in those instances the criminal suppression ruling on the legality of the search itself is not under attack. Plaintiff Joseph Johnson's second amended complaint expressly alleges that defendant Steinkamp provided legal advice to officers which resulted in his being subject to an unreasonable search and deprivation of property without due process of law. This claim is a direct attack on the explicit determination, based upon agreement of the parties in the criminal action, that probable cause existed for the vehicle stop and subsequent search. Under these circumstances the claims against defendant Steinkamp are barred under the <u>Heck v. Humphrey</u>, ruling and the case should be dismissed with respect to this defendant.

Report and Recommendation on Defendant Steinkamp's Motion to Dismiss, dated November 8, 2005.

The above stated reasoning is equally applicable with respect to the motions for summary judgment by remaining defendants that are now before the court. Furthermore, plaintiff has not put forth any

13

additional facts or discovery revelations which might give the court reason to take pause in considering whether dismissal as a matter of law is appropriate.  Finally, the Fourth Amendment search and seizure claim is essentially barred under the doctrine of issue preclusion based upon the court's decision with respect to defendant Steinkamp.  See  Crumley v. St. Paul, 324 F.3d 1003 at 1006. The issue now before the court is identical to the one previously adjudicated; there was a final judgment dismissing the action against the moving defendant; plaintiff Johnson was a party to the prior adjudication; and plaintiff had full and fair opportunity to be heard on the issue.  Id.  Plaintiff's Fourth Amendment claim based upon unreasonable search and seizure should therefore be dismissed for any and all of these reasons.

**Qualified Immunity**

The individual defendants in this action have further moved for summary judgment on qualified immunity grounds.  The doctrine of qualified immunity protects a defendant from liability for alleged misconduct which he reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred.  The Supreme Court has long held that a state officer sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law."  Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991).  Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages.  Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Wiegand v. Spadt, 317 F.Supp.2d 1129, 1137 (D.Neb. 2004)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct

14

534, 537 (1991)). Qualified immunity is immunity from suit rather than a mere defense and should be decided by the court long before trial, though the plaintiff is given the benefit of all relevant inferences on summary judgment, and a party is not entitled to summary judgment on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue. Wiegand v. Spadt, 317 F.Supp.2d at 1137 (citing Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)). "Predicate facts" consist of only the relevant circumstances and the acts of the parties themselves, and do not include the conclusions of others with regard to the reasonableness of those actions. Wiegand at 1137 n.3 (citing Pace, 201 F.3d at 1056).

Defendants in this matter assert that as a matter of law there was no violation of plaintiff's constitutional rights with respect to search and seizure and excessive force, and that they are therefore entitled to qualified immunity protections from liability for individual damages. Upon review of the record before the court and considering all the evidence in the light most favorable to the plaintiff, and further based upon its determination herein that there have been no violations of plaintiff's constitutional rights, the court concludes as a matter of law that plaintiff cannot show that the conduct of any defendant violated clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are entitled to qualified immunity from individual liability for money damages on all constitutional claims alleged in this matter.

**Property Loss**

Plaintiff alleges in his second amended complaint that officers are individually liable for depriving him of property without due process of law. By way of affidavit plaintiff more explicitly alleges that defendants failed to secure his vehicle by locking the doors and raising the windows, and he

15

was consequently robbed of a Rolex watch, a diamond Lexus medallion, a gold necklace, a CD player and adapter, and numerous music discs.[24]  Defendants contend that plaintiff has an adequate remedy for such losses under state law on conversion and therefore he cannot maintain his property loss claim as a due process claim in federal court, pursuant to the decision in Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194 (1984).  Defendants also note that plaintiff has presented no objective evidence that he actually suffered the property losses now being claimed.  Plaintiff generally disputes the defendant's assertions and argues that he is asserting a substantive due process claim that is not barred under Hudson.

In Hudson v. Palmer the Supreme Court held "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Ali v. Ramsdell, 423 F.3d 810, 814 (8th Cir. 2005)(quoting Hudson, 468 U.S. at 533).  The ruling in Hudson represents an expansion of the holding in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981), wherein the supreme court determined that negligent deprivation of property by a state employee was not a due process violation where a state remedy existed.  Id., 451 U.S. at 543.  The opinion in Ali v. Ramsdell addressed the scope of the holding in Hudson and the court therein held that the supreme court decision barred both procedural and substantive due process claims of property deprivation where an adequate state law remedy was available.  Ali at 814.

---

[24] Affidavit of Joseph Johnson, §§ 7 and 8.

Defendants in this action contend that a state law cause of action for the tort of conversion would be available to the plaintiff and would allow him adequate damages for whatever losses he might be able to prove. Plaintiff does not effectively refute the assertion that a state law remedy is available, and he makes no showing that the available remedy is inadequate. The court concludes that Johnson has no cause of action for violation of his procedural or substantive due process rights with respect to property loss and his constitutional claims in that regard should be dismissed. See also Giddens v. Porras, 2006 WL 2502261, *7 (D. Minn.)(quoting Ali v. Ramsdell, 423 F.3d at 814).

**Training and Supervision Liability**

Plaintiff alleges that the City of Minneapolis is liable for its failure to train defendant Stender.[25] Specifically, Johnson argues that the city is liable for failing to train Officer Stender in K-9 handling and narcotics detection, as well as failure to train in the area of use of force, as evidenced by the officer's history of violence and fraud.[26] Plaintiff is emphatic in his insistence that he claims "failure to train" as opposed to "negligent training," asserting that there had to have been "some training" in order for there to have been negligent training. Plaintiff's effort to establish a distinction is unavailing and his claim against the city is without merit.

Plaintiff is essentially alleging local government liability for the unconstitutional acts of its employee. However, plaintiff cannot rely upon supervisory or failure to train liability because the city

---

[25] Plaintiff's Memorandum of Law in Opposition to Defendants' City of Minneapolis and Andrew Stender's Motion for Summary Judgment, page 11. Plaintiff voluntarily "concedes to dismissal of Due Process, deprivation of family rights, 5th amendment against City defendants and 'Negligent' training and Supervision of defendant Stender . . ." but he continues to claim 'failure to train' as a cause of action.

[26] Id.

may not be held vicariously liable for the unconstitutional acts of employees. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)(citing Monell v. Dept. of Soc. Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978). A government entity may be held liable for the unconstitutional acts of its officials or employees when those acts implement an unconstitutional policy or custom. Id. To establish local government liability the plaintiff must show that such policy or custom was the moving force behind the constitutional violation. Id. Failure to properly train and supervise city employees will give rise to § 1983 liability only where the failure to train evidences a deliberate indifference to the rights of individuals such that the shortcoming can properly be considered a city policy or custom. Giddens v. Porras, 2006 WL 2502261, *9 (citing Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1094 (8th Cir. 2004)). A city may be liable for deficient policies regarding hiring and training police officers where (1) hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others such that the failure to train reflects a deliberate or conscious choice by the city; and (3) the alleged deficiency actually caused injury to the plaintiff. Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)(citations omitted). The plaintiff must show "that in light of the duties assigned to specific officers or employees the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. (quoting City of Canton v. Harris, 489 U.S. 338, 390, 109 S.Ct. 1197, 1205 (1989).

      With respect to his action against the City of Minneapolis the plaintiff asserts that he makes a sufficient showing to establish city liability based upon his allegations that Officer Stender has a track record of fabricating police reports to cover up misconduct, engaging in excessive force, and

accumulating complaints. As evidence to support these general allegations plaintiff refers to a civil complaint filing in United States District Court in February 1999.[27] Plaintiff further contends that defendant Stender has not been trained in the area of narcotic detection dog handling and that the K-9 partner, Sam, has no training record. However, plaintiff has not presented any specific evidence whatsoever, either directly or circumstantially, that shows that any actions by Officer Stender in this matter, with regard to search and seizure or use of excessive force, were in violation of plaintiff's constitutional rights. Indeed, the court has already determined that plaintiff has failed to state actionable claims for excessive force or unlawful search and seizure against any individual defendants in this case. Under these circumstances the plaintiff simply has not demonstrated that the city 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights,' and he should not be permitted to advance a § 1983 claim again the City based upon unsubstantiated and largely immaterial allegations. Plaintiff claim against the City of Minneapolis should be dismissed.

Based upon the foregoing discussion, along with the pleadings, exhibits, affidavits, and memorandums:

**IT IS HEREBY RECOMMENDED** that defendants' motions for summary judgment be **granted** [Docket Nos. 64 and 74] and that plaintiff Joseph Johnson's second amended complaint pursuant to Title 42 U.S.C. § 1983 be **dismissed** with prejudice [Docket No. 31].

---

[27] Plaintiff's Memorandum of Law in Opposition to Defendants' City of Minneapolis and Andrew Stender's Motion for Summary Judgment, Exh. 2, Complaint, <u>Johnson v. Stender, City of Minneapolis, et al.</u>, District of Minnesota Civil Case No. 99-248 DSD/JMM. Claims alleging respondeat superior liability of the City of Minneapolis and other defendants, based upon Officer Stender's conduct, were dismissed on motion for summary judgment pursuant to Order dated July 5, 2000.

Dated:    October 18, 2006

                     s/ Arthur J. Boylan
                   Arthur J. Boylan
                   United States Magistrate Judge

   Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before November 3, 2006.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.

Dated:    October 18, 2006

                   s/ Arthur J. Boylan
                   Arthur J. Boylan
                   United States Magistrate Judge

   Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before November 3, 2006.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.